UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHC INDUSTRIES, INC.,

    Appellant,

v.                                                         CASE NO: 8:07-cv-814-T-23

UNITED STEELWORKERS OF AMERICA,

    Appellee.

_____/

## **ORDER**

       The debtor, CHC Industries, Inc., ("CHC"), appeals (Doc. 7) a bankruptcy court order (B.R. Doc. 1965) granting summary judgment for the United Steelworkers of America (the "Steelworkers"). CHC, a wire hanger manufacturer, operated six manufacturing plants in the United States, including plants in Jacksonville, Florida, and Gadsden, Alabama. CHC and the Steelworkers entered into two labor agreements: one covering CHC employees at the Jacksonville plant and a second agreement covering CHC employees at the Gadsden plant. In 2003, CHC filed for bankruptcy under Chapter 11 of the Bankruptcy Code. CHC closed both plants on November 21, 2003, and CHC did not employ anyone covered by the labor agreements on December 31, 2003.

       The Steelworkers subsequently filed a proof of claim in CHC's bankruptcy case asserting that CHC owed certain former employees accrued vacation for 2004. The vacation pay provisions of the labor agreements, which are nearly identical, provide as follows:

> To be eligible for a vacation in any calendar year, . . . the employee must have one (1) year or more of continuous service, and worked 1,000 hours or more in the previous year.

The parties stipulated that each employee subject to the Steelworkers' claim worked more than a thousand hours in 2003. However, objecting to the Steelworkers' claim, CHC asserted that the "continuous service" provision required an employee to be employed by CHC on January 1, 2004, before the vacation pay earned in 2003 could vest. Each party moved for summary judgment in the bankruptcy court. In a thorough and well-reasoned order (B.R. Doc. 1965), the bankruptcy court granted summary judgment for the Steelworkers. CHC appeals (Doc. 7).

The district court reviews *de novo* the bankruptcy court's entry of summary judgment. Gray v. Manklow (In re Optical Technologies, Inc.), 246 F.3d 1332, 1334 (11th Cir. 2001). This appeal requires a straight-forward interpretation of the labor agreements between CHC and the Steelworkers. "The terms of a collective bargaining agreement are to be enforced strictly when those terms are unambiguous." Contempo Design, Inc. v. Chi. & Ne. Ill. Dist. Council of Carpenters, 226 F.3d 535, 546 (7th Cir. 2000). To interpret the labor agreements, "traditional contract interpretation rules are applied if they are consistent with federal labor policies." See Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co., 932 F.2d 1443, 1448 (11th Cir. 1991). Absent evidence of a contrary intent of the parties, contracts terms are interpreted in accordance with their generally prevailing meaning. Restatement (Second) of Contracts § 202(3). "[T]he provisions of a contract should be construed so

as to give every provision meaning. Fla. Polk County v. Prison Health Servs., Inc., 170 F.3d 1081, 1084 (11th Cir. 1999).

In this case, the relevant part of the vacation pay provision requires an employee to have "one (1) year of more of continuous service" to be eligible for vacation pay. In its appellate brief (Doc. 7), CHC asserts: "This provision is entirely clear and requires one year or more of continuous service during the preceding calendar year. The only way for this requirement to be satisfied is for the employee to be employed continuously up to January 1 of the next calendar year . . . ." (Doc. 7, p. 9) (emphasis in original). Black's Law Dictionary defines "continuous" as "[u]ninterrupted; unbroken; not intermittent or occasional." Black's Law Dictionary 322 (6th ed. 1990). "Continuous" also appears in the "seniority" sections of the labor agreements. The seniority sections of the labor agreements define certain events, such as voluntary resignation, that interrupt an employee's continuous service. But as the bankruptcy court noted, nowhere in the labor agreements have the parties specified that eligibility for vacation pay requires employment on a specific date. The bankruptcy court's interpretation, and the plain meaning of the vacation pay provision, requires that an employee work for CHC continuously—i.e, not intermittently or occasionally—for an entire year before becoming eligible for vacation pay.

CHC argues that this interpretation fails to "give effect" to the entire vacation pay provision, asserting that this construction ignores the terms "continuous" and "or more." (Doc. 7, p.13). As described above, the bankruptcy court's interpretation gives the term "continuous" its plain meaning. CHC argues that the vacation pay provision requires

- 3 -

"one year or more of continuous service during the preceding calendar year." (Doc. 7, p. 9). Because an employee cannot work for more than one year during the preceding calendar year, CHC's interpretation of the provision would render the "or more" language meaningless.

To support CHC's interpretation of the provision, CHC cites Alken-Ziegler v. United Auto, Aerospace & Agric. Implement Workers of Am., Local Union 985, 134 F. App'x 866 (6th Cir. 2005); Agee v. Armour Foods Co., 834 F.2d 144 (8th Cir. 1987) (per curiam); Buckholz v. Swift & Co., 609 F.2d 317 (8th Cir. 1979); Simons v. Midwest Tel. Sales & Serv., 433 F. Supp. 2d 1007 (D. Minn. 2006); Amalgamated Clothing & Textile Workers Union of Am. v. Synthane Taylor Corp., 624 F. Supp. 595 (E.D. Pa. 1985); In re Old Electralloy Corp., 167 B.R. 786 (Bankr. W.D. Pa. 1994); Givhan v. Federated Metals Div., 110 N.W.2d 763 (Mich. 1961); and Briggs v. Elec. Auto-Lite Co., 155 N.W.2d 32 (Wis. 1967). However, as the bankruptcy court noted, the contracts in each of these cases substantially differ from the provisions in CHC's labor agreements with the Steelworkers.

Unlike the provision in the labor agreements at issue, each of these cases involved agreements with contractual provisions conditioning eligibility for vacation pay on employment on a specified date. See Alken-Ziegler, 124 F.App'x at 867 (contract requiring employment on January 1st); Agee, 834 F.2d at 144 (requiring employment on December 31st); Buckholz, 609 F.2d at 319 (requiring employee to be on active payroll on December 28th); Simons, 433 F. Supp. 2d at 1011 (requiring employment for one week after vacation taken by employee); Amalgamated Clothing, 624 F. Supp. at 600

(requiring employee to be on employee records on July 1st); In re Old Electralloy, 167 B.R. at 797 (requiring employment on January 1st); Givhan, 110 N.W.2d at 764 (requiring employee to be continuously employed between April and October of the vacation year); Briggs, 155 N.W.2d at 34 (requiring active employment on December 31st).  The labor agreements between CHC and the Steelworkers lack any requirement that an employee be employed on a specified date to be eligible for vacation pay.  The labor agreements condition vacation pay only upon the employee having one year or more of continuous service and working a thousand hours in the previous year.  Because each employee subject to the Steelworkers' claim had one or more years of continuous service and worked at least a thousand hours in 2003, the employees are entitled to vacation pay for 2004.

Accordingly, the bankruptcy court's order (B.R. Doc 1965) granting summary in favor of the Steelworkers is **AFFIRMED**.  The Clerk is directed to close the case.

ORDERED in Tampa, Florida, on August 29, 2008.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

cc:     Courtroom Deputy